JOE PROCTOR v. STATE.

No. A-1688.   Opinion Filed November 5, 1913.

Appeal from County Court, Oklahoma County;
John W. Hayson, Judge.

Joe Proctor was convicted of a violation of the prohibition law, and appeals. Reversed.

Thomas W. Connor and J. H. Beatty for plaintiff in error.

Chas. West, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen. (Monroe Osborne, of counsel), for the State.

PER CURIAM. Plaintiff in error was convicted upon an information charging that he did have in his possession unlawfully, intoxicating liquors, with the intent to sell, barter, give away and otherwise furnish the same. On the 27th day of February, 1912, judgment was entered, and defendant sentenced to be confined in the county jail for thirty days and to pay a fine of five hundred dollars. The evidence shows that on the date alleged some state enforcement officers raided race horse barn No. 4, within the fair grounds and found a part of a barrel of bottled beer and a few half pint bottles of whisky. The whisky was found in the pockets of coats that were hanging around in the barn. U. M. Baughman was sworn and called as a witness for the state. Thereupon the state asked leave to endorse the name of S. J. Hanson on the information. Over the objection of the defendant leave was granted. Baughman testified that he was a state enforcement officer; did not know the defendant; raided the barn about four o'clock that afternoon, but did not see the defendant; "did not remember of any conversation between he and I. When we were carrying out

the beer and breaking it up the defendant appeared and ·some one of us spoke up and said that we did not care· so much about the beer, if we could only find the proprietor, and the defendant said, 'I am the fellow you are looking for if you want to find the proprietor.'·'' That he did not know who owned the coats or who owned the liquor found in the pockets, and did not know who owned the beer. That Mr. Hanson asked them not to break the bottles in the barn where the horses would step on them. S. J. Hanson, the next witness for the state, testified that he kept three race horses in said barn, and was there every day during the fair; that the defendant Proctor and his father each kept a race horse in said barn; that he saw the defendant there several times during the fair; that he did not think he ever saw any person drinking or in the defendant's stall. That he had seen persons drinking in the barns; that the defendant did not have control of the barn, that he rented his part of it from the fair association. That he was there every morning and usually most of the afternoon and never saw the defendant sell any whisky or beer. J. W. Gillispie was next called as a witness for the state and testified that the defendant was not there when the raid was made, but came later, and was standing outside of the stall where he kept his mare and Mr. Baughman asked if the proprietor was there, and Mr. Proctor said he was the man they were looking for. That they found about a half barrel of beer and found a few bottles of whisky; that three or four men were drinking beer the first time they went there. On cross-examination he stated that the defendant did not say anything about destroying the liquor. That some one made a request not to break the bottles in the barn, but he did not remember who. James S. Powers, the next witness, testified that he had examined the record in the office of collector of internal revenue for Oklahoma county, and produced a copy of the same, which is in words and figures as follows: ''Name, Olympic Club, Joe Proctor, President, Gene Parham, V. Pres., Fred Glakely, Sec. Business, R. L. D. Place, 214 W. Main, Oklahoma City.'' J. C. Gillmore testified that as an ·enforcement officer he raided said barn at one time and got some boys for selling, as he saw one of the boys get twenty-five cents there. This was all the evidence on behalf of the state. The defendant moved to direct a verdict, which was overruled. In behalf of the defendant, F. A. Hoskin testified that he kept horses in said barn, and was present when the enforcement officers made the raid, and was there when they broke up the bottles. That the defendant and witness both asked them not to break them in the barn, or over the harness, or out in front where the horses would step on the glass; that the defendant did not say that he was the proprietor of the barn. The defendant offered to prove by said witness that a man by the name of Fry had a government license, and the place named therein was this barn. The state objected and the court sustained the objection. That he was there every day during the fair, and did not see or know of the defendant having any intoxicating liquor there. That there was about twenty people altogether that stayed around the barn. George Keaton testified that he was employed there as a hostler, that he was standing by when the officers were breaking the bottles, and the defendant came in and said he did not want them to break the bottles in there over the harness and asked them not to, and told them if they needed any help to get it out he would help them. That he did not want the broken glass there, as the horses would be liable to step on it, and get hurt. That he said nothing about being the proprietor. A number of errors are assigned upon the rulings made on the trial. It is apparent that there were some rulings of the trial court in receiving and rejecting evidence of doubtful

propriety. However, it is unnecessary to consider but the one question, that is, the insufficiency of the evidence to sustain the verdict. We think this assignment well founded. It was essential for the state to prove that the defendant did have possession of the intoxicating liquors in question. The facts proven are simply suspicious circumstances, but do not afford evidence sufficient to establish the fact of the defendant's possession. For this reason the judgment must be reversed.